**Jemmi TAYLOR, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–2590.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 27, 2007.

Filed: Oct. 3, 2007.

Cindy S. Chang, Walnut, CA, for Petitioner.

Annetta F. Givhan, Office of United States Attorney, Philadelphia, PA, Richard M. Evans, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, BARRY and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Jemmi Taylor petitions for review of the final decision of the Board of Immigration Appeals ("BIA") ordering his removal from the United States. He claims that the BIA, in affirming the decision of the Immigration Judge ("IJ"), erred by denying his application for withholding of removal. We disagree and, for the reasons set forth below, will deny the petition.

### I.

As we write exclusively for the parties, who are familiar with the factual and procedural history of this case, we will set forth only those facts necessary to our analysis. Taylor is a native and citizen of Indonesia, of Chinese ethnicity and Christian religion. He entered the United States on a visitor's visa on April 13, 1998, and remained in the United States after the visa expired. He was placed in removal proceedings on November 10, 2002, when the Immigration and Nationality Service issued a Notice to Appear.[1] At his initial appearance in front of the IJ, Taylor conceded removability, but made applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

At a subsequent hearing, Taylor testified regarding his life in Indonesia prior to 1998. Taylor's testimony focused primarily on his childhood. He testified that when he was in the fourth grade some fellow students repeatedly took his money from him. The following year, his fifth

---

1. The INS ceased to exist in 2003. Pursuant to the Homeland Security Act of 2002, the enforcement functions of the INS were transferred to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement. *See* Homeland Security Act of 2002, Pub. L. No. 107–296, § 441, 116 Stat. 2135, 2192.

grade teacher permitted other students to twist his ear when he was unable to complete the assignment of singing a song in front of the class. Taylor also testified that his high school refused to allow him to participate in a graduation ceremony because he was improperly dressed. He stated that all of these incidents occurred because he was a Chinese Christian. As supporting evidence, he testified that the high school allowed another non-Chinese Indonesian student to participate in the graduation ceremony despite being improperly dressed.[2]

In addition to the harassment he suffered as a student, Taylor testified that he was robbed twice in 1995 and 1997. Finally, Taylor testified that during the 1998 presidential campaign, a group of native Indonesians overturned his vehicle while he was stopped at a red light. He testified that both of these incidents were motivated by his religion and ethnicity.

Following Taylor's testimony, the IJ issued its decision and ordered Taylor removed to Indonesia. The IJ found that Taylor's asylum application was untimely and that he had not presented extraordinary circumstances which would excuse late filing. In addition, the IJ denied Taylor's application for withholding of removal and protection under the CAT. While the IJ found Taylor's testimony credible, he found that there was not sufficient evidence to show past persecution or fear of future persecution should Taylor return to Indonesia. The IJ also found that it was not more likely than not that Taylor would be tortured in Indonesia. The BIA affirmed the decision of the IJ after Taylor filed an appeal. This timely petition for review followed.

## II.

We have jurisdiction to review a final order of removal from the BIA pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA has adopted a portion of the IJ's decision, we review the decisions of both the BIA and the IJ. *Shehu v. Attorney Gen.*, 482 F.3d 652, 657 (3d Cir.2007). Our review is for substantial evidence, upholding the decision of the BIA and IJ if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir.1998) (internal quotation marks and citation omitted). "[T]he BIA's [and IJ's] finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001).

## III.

Taylor petitions for review of the IJ's denial of his application for withholding of removal.[3] Pursuant to the Immigration and Nationality Act ("INA"), the Attorney General may not remove an alien to his country of origin if his "life or freedom would be threatened in that country be-

---

**2.** Taylor also testified that his tuition was higher than that of other high school students and that he was hazed in college. However, he admitted at the hearing that these incidents did not appear to be related to his Chinese ethnicity or Christian religion.

**3.** It is unclear whether Taylor also petitions for review of the IJ's determination regarding his application for protection under the CAT. However, if Taylor is making such a petition, we will deny it. In order to receive protec-

tion under the CAT, a petitioner must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The torture must be inflicted by the government or with the consent or acquiescence of a public official. *Id.* Taylor has provided no evidence that would indicate that he would be tortured by the Indonesian government if returned to Indonesia.

cause of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). In order to qualify for withholding of removal under § 1231, an alien must show the threat by a clear probability. *INS v. Stevic*, 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). "A clear probability means 'more likely than not.'" *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir.2003) (quoting *Stevic*, 467 U.S. at 429–30, 104 S.Ct. 2489).

The IJ's determination that Taylor failed to show that his life or freedom would be threatened in Indonesia because of his race, religion or nationality by a clear probability is supported by substantial evidence. Taylor points to isolated incidents of cruelty by school children and two instances of what may have been unfair treatment by a teacher. While these incidents were clearly unpleasant for Taylor, they do not rise to the level of "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993). Taylor's testimony regarding the two robberies and the overturning of his car, likewise, do not rise to the level of past persecution. Isolated criminal acts, even those that result in minor theft and injury, cannot support a finding of past persecution. *Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir.2005).

Even if the incidents Taylor described were sufficiently severe to rise to the level of persecution, Taylor's application would still have to be denied. A petitioner may only be granted withholding of removal if he is likely to be persecuted "by the government or forces the government is either unable or unwilling to control." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir.2003) (internal quotation marks and citation omitted). Taylor has set forth no evidence that the harassment he suffered

was at the hand of the Indonesian government.

Therefore, and for the reasons set forth above, we will deny Taylor's petition for review.